# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-1257V

```
* * * * * * * * * * * * * * * * * * * * * * *  *
                                               *
                                               *
GLENN REINHARDT,                               *     UNPUBLISHED
                                               *
              Petitioner,                      *
                                               *
                                               *     Special Master Katherine E. Oler
v.                                             *
                                               *
                                               *     Filed: April 22, 2021
SECRETARY OF HEALTH AND                        *
HUMAN SERVICES,                                *
                                               *     Interim Attorneys' Fees and Costs
              Respondent.                      *
                                               *
                                               *
* * * * * * * * * * * * * * * * * * * * * * *  *
```

*Michael Baseluos*, Baseluos Law Firm, PLLC, San Antonio, TX, for Petitioner
*Julia Collison*, U.S. Department of Justice, Washington, DC, for Respondent

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On September 15, 2017, Glenn Reinhardt ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program") alleging Petitioner suffered from bilateral optic neuritis, leading to irreversible legal blindness from the influenza ("flu") vaccine he received on October 11, 2016. Pet. at 1, ECF No. 1.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

On August 9, 2020, Petitioner filed an application for interim attorneys' fees and costs, totaling $549,461.89.[3] Fees App. at 11, ECF No. 117. On August 10, 2020, Respondent filed a response stating it is within my discretion to award interim attorneys' fees and costs. Fees Resp., ECF No. 118.  Respondent "defers to [me] to determine whether or not petitioner here has met the legal standard for interim fees and costs award." *Id.* at 2.

For the reasons discussed below, I hereby **GRANT IN PART** Petitioner's application and award a total of **$501,197.89** in interim attorneys' fees and costs.

## I.    Legal Standard

### A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375.  *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013).  Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed.

---

[3] The correct amount of Petitioner's request is $547,461.89. It appears that Mr. Baseluos double billed for Dr. Cestari's retainer ($2,000). Petitioner's calculations regarding his experts' costs are inconsistent because he uses the terms "inclusive" and "exclusive" of retainer throughout his Fees Motion. The correct amounts Petitioner has requested for his experts are $145,750 for Dr. Akbari; $145,915 for Dr. Cestari; and $62,480 for Dr. Turner. The retainers will be removed from Petitioner's miscellaneous costs for clarity and will be incorporated in the expert costs. All other calculations are accurate.

Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

Since the petition for compensation was successful, Petitioner is entitled to reasonable attorneys' fees and costs. *See* § 15(e)(1). Reasonable attorneys' fees and costs in Vaccine Act cases are determined using the lodestar approach, which begins with an assessment of a reasonable hourly rate multiplied by a reasonable number of hours expended in the case. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008.)

The determination of the amount of reasonable attorneys' fees is within the special master's discretion. *See, e.g., Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993). Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991). Moreover, special masters are entitled to rely on their own experience and understanding of the issues raised. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 483 (1991), *aff'd in relevant part,* 988 F.2d 131 (Fed. Cir. 1993) (per curiam).

Petitioner "bears the burden of establishing the hours expended" and the reasonableness of the requested fee award. *Wasson,* 24 Cl. Ct. at 484. Notwithstanding respondent's failure to raise any specific objections to petitioner's fee application, "the Special Master . . . [is] not limited to endorsing or rejecting respondent's critique." *Duncan v. Sec'y of Health & Hum. Servs.*, No. 99-455V, 2008 WL 4743493 (2008). Furthermore, "the Special Master [has] no additional obligation to warn petitioners that [she] might go beyond the particularized list of respondent's challenges." *Id*.

## II.    Discussion

### A.  Undue Financial Hardship

Counsel for Petitioner has worked on this case for over four years; further, counsel avers that given the status and length of the case, waiting for a ruling on entitlement and potential damages would exact a "heavy financial burden on counsel." Fees App. at 1. Petitioner has also submitted expert reports from five doctors: Dr. Akbari, an immunologist; Dr. Cestari, a neurologist; Dr. Schatz, a neuro-ophthalmologist; Dr. Turner, a neuroradiologist; and Dr. Patrick, a vocational rehabilitation and life care planning specialist. Dr. Akbari has submitted four reports (Ex. 19, 34, 37, 40), Dr. Cestari has submitted three reports (Exs. 14, 35, 38), and Dr. Turner has submitted three reports (Exs. 28, 29, 30), Dr. Schatz submitted one report (Ex. 32), and Dr. Patrick submitted a life care plan and vocational assessment (Exs. 22-24). Counsel for Petitioner has invested significant time and costs in the procurement of expert reports and medical records and believes "these factors contributed to an extremely time intensive effort to resolve in compensation

for petitioner's benefit." *Id.* at 2. Thus, I find it reasonable to award interim fees and costs at this juncture to avoid any undue financial hardship.

### B. Attorneys' Fees

Petitioner requests a total of $160,897.00 in attorneys' fees. *See generally* Fees App. at 4; Fees Ex. A at 69.

#### 1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Petitioner's counsel, Mr. Baseluos requests to be compensated at a rate of $275 per hour for work performed in 2017, $295 per hour for work performed in 2018, $315 per hour for work performed in 2019, and $335 per hour for work performed in 2020. *See* Fees App. at 3. Mr. Baseluos also requests a paralegal rate of $150 per hour. These rates are consistent with the Fee Schedule and with what Mr. Baseluos has been awarded in the past. *See Toole v. Sec'y of Health & Hum. Servs.*, No. 15-816V, 2017 WL 2464968 (Fed. Cl. Spec. Mstr. May 10, 2017); *Hernandez v. Sec'y of Health & Hum. Servs.*, No. 16-1508V, 2018 WL 4391060 (Fed. Cl. Spec. Mstr. Aug. 20, 2018); *Lewis v. Sec'y of Health & Hum. Servs.*, 15-907V, 2020 WL 1283461 (Fed. Cl. Spec. Mstr. Feb. 20, 2020). I find the requested rates to be reasonable and that no adjustment is warranted.

#### 2. Hours Reasonably Expended

---

[4] The 2015–2016 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.
The 2017 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g., McCulloch*, 2015 WL 5634323, at *26.

Petitioner's counsel has provided a breakdown of hours billed and costs incurred. Fees App. at 37-158. I find the hours to be largely reasonable, however I find a small reduction is appropriate for time billed by attorneys and paralegals for administrative tasks, such as organizing exhibits, preparing CDs, and filing records. Billing for administrative tasks is not appropriate. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature ... should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Mostovoy v. Sec'y of Health & Hum. Servs.*, No. 02-10, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) (citing "reviewing invoices, setting up meetings, and making travel arrangements" as examples of administrative tasks); *Macrelli v. Sec'y of Health & Hum. Servs.*, No. 98–103, 2002 WL 229811, at *7 (Fed. Cl. Spec. Mstr. Jan. 30, 2002) (stating that "time spent performing secretarial tasks is to be subsumed in the overhead costs of practicing law and is not reimbursable"); *Isom v. Sec'y of Health & Hum. Servs.,* No. 94–770, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with respondent that tasks such as filing and photocopying are subsumed under overhead expenses).

The entries that are secretarial in nature are on 4/7/2017 (1.4 hours), 4/11/2017 (1.2 hours), 9/15/2017 (1.2 hours), 9/27/2017 (2.7 hours), 10/3/2017 (1.9 hours), 5/16/2018 (1.1 hours), 6/30/2018 (1.4 hours billed at an hourly rate of $125.00), 9/9/2018 (0.6 hours), 2/25/2020 (0.7 hours), 3/5/2020 (0.6 hours), 3/16/2020 (0.8 hours), 4/1/2020 (1 hour for "covert [sic] jpeg images to pdfs in anticipation of presentation on enhancement on MRIs". Ex. A at 44), 4/8/2020 (2.3 hours), 4/30/2020 (1.4 hours and 1.2 hour entries), 5/1/2020 (1.3 hours), 5/13/2020 (2.1 hours); 6/29/2020 (1.6 hours), for a total of 24.5 hours billed at the paralegal rate of $150.00 (except the entry on 6/30/2018 billed at $125.00), for a total of $3,640.00.

Total attorneys' fees to be awarded: **$157,257.00**

## C. Reasonable Costs

Petitioner requests a total of $386,564.89 in costs, which includes (but is not limited to) postage costs, the Court's filing fee, legal research fees, and expert fees. A breakdown of Petitioner's costs is laid out in the ensuing sections. I have reviewed the supporting documentation

and find this request to be largely reasonable. Accordingly, I award costs in part. Before I provide analysis concerning Petitioner's expert costs, I want to ensure Mr. Baseluos recognizes that he must monitor the hours expended by his experts. Two of his experts billed 265 hours of work on this case, and a third expert expended over 100 hours. I do not believe the complexity of this case warranted this amount of work and have adjusted the hours accordingly. *See Sicard v. Sec'y of Health & Hum. Servs.*, No. 16-332V, 2019 WL 6462385 at *6 (Fed. Cl. Spec. Mstr. Nov. 4, 2019) ("[P]etitioners and their experts are not given a '"blank check to incur expenses' to be paid by the Vaccine Trust Fund.").

### 1. Petitioner's Expert Costs

Petitioner requests costs for the work performed by Drs. Omid Akbari, Dean Cestari, Robert Turner, and James Patrick.

#### a. Dr. Omid Akbari

Petitioner requests a rate of $550.00 per hour for 265 hours of work performed for a total of $145,750.00, which also includes Dr. Akbari's $5,000.00 retainer. Dr. Akbari has a Ph.D. in molecular and cellular immunology. Ex. 18 at 1. He is a Professor of Medicine and a Professor of Immunology at University of Southern California, USC, Keck School of Medicine. Tr at. 12. Additionally, Dr. Akbari is an active researcher in the field of immune tolerance in triggering an autoimmune disease. Tr. at 14. Despite Dr. Akbari's qualifications in immunology, he is not a medical doctor and lacks clinical experience. Dr. Akbari has been consistently awarded a rate of $500/hour by other special masters in the Program. *See Hernandez v. Sec'y of Health & Hum. Servs.*, No. 16-1508V, 2018 WL 4391060 (Fed. Cl. Spec. Mstr. Aug. 20, 2018); *Shinskey v. Sec'y of Health & Hum. Servs.,* No. 15-713V, 2019 WL 2064558 (Fed. Cl. Spec. Mstr. May 9, 2019); *Sheppard v. Sec'y of Health & Hum. Servs.*, No. 17-819V, 2020 WL 1027958 (Fed. Cl. Spec. Mstr. Feb. 20, 2020); *Bisceglia v. Sec'y of Health & Hum. Servs.*, No. 19-91V, 2020 WL 6146101 (Fed. Cl. Spec. Mstr. Sep. 20, 2020); *Robinson v. Sec'y of Health & Hum. Servs.*, No. 15-967V, 2018 WL 5629850 (Fed. Cl. Spec. Mstr. Sep. 12, 2018); cf. *Riley v. Sec'y of Health & Hum. Servs.*, No. 16-262V, 2020 WL 1026929 (Fed. Cl. Spec. Mstr. Feb. 6, 2020) (granting Dr. Akbari an expert rate of $300.00 per hour); *Lewis v. Sec'y of Health & Hum. Servs.*, 15-907V, 2020 WL 1283461 (Fed. Cl. Spec. Mstr. Feb. 20, 2020) (reaffirming Dr. Akbari's expert hourly rate of $300.00 per hour). I find that $500 per hour, as has consistently been awarded to Dr. Akbari to be an appropriate hourly rate.

Dr. Akbari provided a total of four reports, totaling roughly 43 pages (this includes his credentials, Petitioner's relevant medical history, diagrams, and a lists of references). The substance of Dr. Akbari's reports is informative in that they offer his opinion regarding Petitioner's theory of causation; however, in the undersigned's experience, the time Dr. Akbari spent preparing these reports is excessive. In preparation of his first expert report, Dr. Akbari billed roughly 50 hours for literature review. *See* Fees Ex. G at 1-3. Many experts in the Program spend this much time conducting literature review and preparing multiple reports, not just on reviewing medical literature. *See K.B.H. v. Sec'y of Health & Hum. Servs.*, No. 17-1739V, 2021 WL 1344029 (Fed. Cl. Spec. Mstr. Jan. 8, 2021) (awarding Dr. Blitshteyn a total of 37.75 hours for four expert reports as well as literature review); *Jackson v. Sec'y of Health & Hum. Servs.*, No. 17-538V, 2019 WL

7560237 (Fed. Cl. Spec. Mstr. Nov. 15, 2019) (awarding $10,875.00 for costs associated with Dr. Steinman's four expert reports and associated literature review). While these cases are factually different from the case at bar, they document a more typical amount of time an expert spends in preparing and drafting a report. In addition to the over 50 hours spent researching materials to draft his first expert report, Dr. Akbari billed nearly 20 hours for the drafting, editing, highlighting references cited in this first report.

For Dr. Akbari's second report (or first rebuttal report), he spent an additional 20 hours researching medical literature and over six hours preparing an eight-page rebuttal report. *See* Fees Ex. G at 5-6. In total, Dr. Akbari spent over 100 hours researching medical literature to support his medical theory. *See generally* Fees Ex. G. In the undersigned's experience, this is well in excess of the time spent by other experts in cases of comparable complexity.

In making reductions, a line-by-line evaluation of the fee application is not required. *Broekelschen v. Sec'y of Health and Hum. Servs.,* 102 Fed. Cl. 719, 729 (2011); *see also Wasson v. Sec'y of Health and Hum. Servs.*, 24 Cl. Ct. 482, 484 (1991). Rather, special masters may "'render a decision based on general guidelines as to a reasonable fee[ ]'" in the context of the Vaccine Program and in the context of this case in particular. *Wasson*, 24 Cl. Ct. at 484. Additionally, an expert should be compensated only for the number of hours reasonably expended by the expert. *King ex rel. King v. Sec'y of Health & Hum. Servs.*, No. 03–584V, 2010 WL 5470787, at *4 (Fed. Cl. Spec. Mstr. Dec. 13, 2010) (indicating that counsel had a "duty to 'monitor the expert's overall fees to ensure that the fees remain reasonable.'"); *Hines ex rel. Sevier v. Sec'y of Dep't of Health & Human Servs.*, 22 Cl. Ct. 750, 754 (1991) ("The special master is within his discretion in reducing hours that are duplicative, padded, spent on unrelated matters, or not 'reasonably expended.'" (quoting *Griffin & Dickson v. United States*, 21 Cl. Ct. 1, 11 (1990))

Dr. Akbari has provided expert reports in a number of cases in the Program but I believe this is the first case where he offered an opinion involving optic neuritis.[5] I have considered that point in conducting my analysis of his hours spent researching and drafting his reports. In light of the above, I reduce Dr. Akbari's time spent reviewing medical literature by 20%, or 20 hours. I grant Dr. Akbari 245 hours at an hourly rate of $500.00 per hour.

Total costs for Dr. Akbari: $122,500.00.

b.  Dr. Dean Cestari

Petitioner requests a rate of $550.00 per hour for 265.3 hours of work performed for a total of $145,915.00, which also includes Dr. Cestari's $2,000.00 retainer. Dr. Cestari is a board-certified neurologist and ophthalmologist. Ex. 15 at 2. Dr. Cestari is an Associate Professor at Harvard Medical School and is very well qualified in both neurology and ophthalmology. *See generally* Ex. 15. Dr. Cestari has had an active medical and surgical practice at Massachusetts Eye and Ear Infirmary since 2006, where he also serves as the fellowship director of neuropathology. *Id.* at 35; Tr. at 168. He performs clinical and translational research, is well published in many

---

[5] I note that many of the articles of medical literature are not specific to optic neuritis and have been cited by Dr. Akbari in prior Vaccine Program cases.

peer-reviewed publications, and regularly gives local, regional, national and international talks. Ex. 15 at 29-32; Tr. at 169-72. He is one of roughly ten neuro-ophthalmology specialists in the United States. Tr. at 166.

Dr. Cestari is extremely well-qualified and has been previously awarded his requested rate of $550.00 per hour. *See McDermott v. Sec'y of Health & Hum. Servs.*, No. 17-1401V, 2020 WL 3046511 (Fed. Cl. Spec. Mstr. May 19, 2020); *Halbrook v. Sec'y of Health & Hum. Servs.*, No. 19-1572V, 2021 WL 1193541 (Fed. Cl. Spec. Mstr. Mar. 9, 2021). I find that $550 per hour is a reasonable and appropriate hourly rate for Dr. Cestari.

Dr. Cestari's first expert report demonstrated he was an expert in neuro-ophthalmology. He spent a substantial portion of his report discussing the various types of optic neuropathies but only begins discussing his medical theory on page 13 of his 21-page report. *See* Ex. 14. When Dr. Cestari opined about how the flu vaccine may have caused Petitioner's optic neuritis, he discussed ASIA (autoimmune/inflammatory syndrome induced by adjuvants). Dr. Cestari's report was limited with respect to analysis of the *Althen* prongs, except to state that 12 days following vaccination was a plausible time frame for Petitioner to have developed optic neuritis. Dr. Cestari spent approximately 30 hours in the research and preparation of this report and 20 hours drafting, editing, and revising the report.

Dr. Cestari's second report briefly addressed molecular mimicry, but largely reiterated what was discussed in Dr. Akbari's reports and cited to much of the same literature. Dr. Cestari spent approximately 18.5 hours conducting research for his second report and 32 hours drafting, editing, and revising that document. This does not include time spent for his many email and phone conversations with Mr. Baseluos and Dr. Akbari to write this report.

The portions of Dr. Cestari's reports that related to his field of expertise were helpful in moving the case forward. However, the portions of his reports that discussed ASIA and molecular mimicry were not. I also note that Dr. Cestari spent a total of 50 hours conducting research and 50 hours drafting his reports. This expenditure of time is excessive, in the undersigned's experience. *Loutos v. Sec'y of Health & Hum. Servs.*, No. 03-355V, 2015 WL 10986961 (Fed. Cl. Spec. Mstr. Dec. 18, 2015) (granting one expert, a neuroscientist, 18 hours of research but deducting Petitioner's treating physician's 18 hours of research by 83% to 3 hours). Based on the above, I grant Dr. Cestari 90% of his requested hours, or 238.8 hours.

Total costs for Dr. Cestari: $131,340.00.

    c.  Dr. Robert Turner

Petitioner requests a rate of $550.00 per hour for 113.6 hours of work performed by Dr. Turner for a total of $62,480.00, which also includes his $2,500.00 retainer. Dr. Turner is board-certified in radiology, with a subspecialty in neuroradiology. Ex. 27 at 3. Unlike Dr. Cestari, Dr. Turner is a new expert in the Program and has not yet been awarded expert costs. Dr. Turner's specialty in neuroradiology is highly relevant to the issues present in this case. Other special masters in the Vaccine Program have granted a similar rate to a neuroradiologist. *See Pestka v. Sec'y of Health & Hum. Servs.*, No. 06-708V, 2015 WL 11109789 (Fed. Cl. Spec. Mstr. Mar. 25,

2015) (granting Dr. Barnes, a neuroradiologist a rate of $500/hour); *Quackenbush-Baker v. Sec'y of Health & Hum. Servs.*, No. 14-1000V, 2018 WL 4090640 (Fed. Cl. Spec. Mstr. Jul. 31, 2018) (granting Dr. Robert Shuman $4000 for 10 hours of work performed for an initial review of Petitioner's MRIs, equaling $400/hour); *Nwala v. Sec'y of Health & Hum. Servs.*, No. 16-923V, 2019 WL 2005751 (Fed. Cl. Spec. Mstr. Apr. 12, 2019) (reversing Dr. Joseph Rizzo's originally granted rate of $450/hour to $650/hour). Given that the hourly rates previously awarded by other special masters to neuroradiologists range from $400 to $650 per hour, I do not find Petitioner's requested rate to be unreasonable.

I analyzed Dr. Turner's hourly invoice, and while 113.6 hours appears to be on the high end of a reasonable request, there were no obviously excessive entries. Thus, I will grant Dr. Turner's hours in their entirety.

Total costs for Dr. Turner: $62,480.00.

> d. Dr. James Patrick

Petitioner requests a rate of $300.00 per hour for approximately 80 hours of work performed by Dr. Patrick for a total of $26,045.09. Dr. Patrick has a Master of Science and Ph.D. in rehabilitation counseling. Ex. 17 at 1. Dr. Patrick also has nearly 20 years of experience as a rehabilitation consultant. *See id.* Without making a determination as to the reasonableness of Dr. Patrick's requested rate, I find that the amount he billed for the work he provided was generally reasonable and appropriate, except as noted below.

Dr. Patrick billed at a full rate during his travel time. Those entries on 6/19/2018, 6/21/2018, 6/23/2018, 4/20/2019, and 4/23/2019 total 31 hours. In the Vaccine Program, special masters traditionally have compensated time spent traveling when no other work was being performed at one-half the hourly rate. *See Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153, at *24 (Fed. Cl. Spec. Mstr. July 25, 2011); *Rodriguez v. Sec'y of Health & Hum. Servs.*, No. 06-559V, 2009 WL 2568468, at *21 (Fed. Cl. Spec. Mstr. Jul. 27, 2009); *English v. Sec'y of Health & Hum. Servs.*, No. 01-61V, 2006 WL 3419805, at *12-13 (Fed. Cl. Spec. Mstr. Nov. 9, 2006). However, special masters should not use this rule as standard practice but rather "[e]ach case should be assessed on its own merits." *Gruber v. Sec'y of Health & Hum. Servs.*, 91 Fed. Cl. 773, 791 (2010). "Even an automatic 50% award may be too high for an undocumented claim, given the possibility that an attorney may use the travel time to work on another matter or not to work at all while traveling." *Id.* Because Dr. Patrick did not specify whether or not any work was performed during his travel, I will apply the same deduction that applies to attorneys' fees and cut his travel time by 50%. *See A.A. by Akers v. Sec'y of Health & Hum. Servs.*, No. 15-597V, 2018 WL 3216243 (Fed. Cl. Spec. Mstr. May 31, 2018) (awarding Dr. Kinsbourne 50% of his hourly rate of $400/hour for travel); *O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08-243V, 2015 WL 2399211 (Fed. Cl. Spec. Mstr. Apr. 28, 2015) (awarding Dr. Patrick 50% of his hourly rate for travel). This is a deduction of 31 hours at an hourly rate of $150.00 per hour, or $4,650.00.

Petitioner also includes the cost of Dr. Patrick's 2019 trip to interview Petitioner and gather information to complete a life care plan, an amount of $1,310.09. This cost seems to be reasonable,

9

thus I shall grant it in full.

Total costs for Dr. Patrick: $21,395.09.

2.  Miscellaneous Costs

Petitioner requests $6,374.80[6] for out of pocket costs, which include an initial review by Dr. Herbst (who did not testify or provide a medical opinion), mailing, videography, CD copying, medical literature, Dr. Patrick's 2018 trip costs, Dr. Schatz deposition invoice, and transcript fees.

Petitioner failed to provide documentation for the purchase of medical literature, thus I will defer those costs until Petitioner provides documentation in his next Fees Motion. This is a deduction of $149.00.

Petitioner only provided documentation for roughly half of his mailing and none for copying expenses, but they do not seem unreasonable, thus I will grant them in their entirety. However, Petitioner's counsel is warned to submit full documentation in the future. All other costs are accounted for and are reasonable.

Total miscellaneous costs to be awarded: $6,225.80.

## III.   Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$501,197.89**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and his attorney, Michael Baseluos.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[7]

**IT IS SO ORDERED.**

s/ Katherine E. Oler
Katherine E. Oler
Special Master

---

[6] This amount does not include the retainers paid to the experts, which were evaluated and paid as part of the expert costs.

[7] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.