# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-1257V

| | |
|---|---|
| GLENN REINHARDT, | |
| Petitioner, | Special Master Katherine E. Oler |
| v. | Filed: April 20, 2022 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Motion to Strike; Judiciary Estoppel; Issue Preclusion; Judicial Notice |
| Respondent | |

### OPINION AND ORDER REGARDING PETITIONER'S MOTION TO STRIKE[1]

On March 4, 2022, Petitioner filed a Motion entitled "Petitioner's Motion to Strike Report of Dr. Lee/Request for Judicial Notice and/or Declaratory Judgment on Issue of Legal/Statutory Blindness and Vocational Rehabilitation (VR)." Petr's Mot. to Strike, ECF No. 180 (hereinafter "Petr's Mot."). Petitioner requests the following relief in his Motion:

1. That the Court "preclude the Government's litigation of legal blindness by estoppel and strike all aspects of Dr. Lee's report that call into question an already adjudicated disability";

2. That the Court "reject opinions of Dr. Lee that fall under the expertise of an OT and/[or] vocational rehabilitation expert";

3. That the Court "preclude the Government's claim via [Respondent's vocational expert] that [Petitioner] is a candidate for [vocational rehabilitation] by estoppel";

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

1

4. That the Court "take judicial notice of the prior adjudication of [Petitioner's] statutory blindness and judicial notice that [Petitioner] is not a candidate for [vocational rehabilitation]"; and

5. To the extent that the Court "can issue a declaratory judgment" on the requested judicial notice, that the Court do so.

Petr's Mot. at 11. For the reasons discussed in this decision, Petitioner's Motion is **DENIED**.

## I.     Procedural History

Petitioner filed his Motion on March 4, 2022. ECF No. 180.

I held a status conference in this case on March 8, 2022. *See* Scheduling Order of March 16, 2022, ECF No. 188. I addressed Petitioner's instant motion regarding judicial estoppel and judicial notice. *Id.* at 2. I informed the parties that I would like them to brief this issue and stated that I would then issue a ruling on Petitioner's motion. *Id.*

On March 16, 2022, Respondent filed his response. ECF No. 180 (hereinafter "Respt's Resp."). Petitioner filed his reply on March 23, 2022. ECF No. 189 (hereinafter "Petr's Reply").

## II.    Parties' Arguments

### A.  Issue Preclusion/Judicial Estoppel

In his Motion, Petitioner notes that there is a "general policy that the Government should not be precluded from litigating issues of public importance which may have been decided in an earlier action between private parties." Petr's Mot. at 6, *citing United States v. Mendoza*, 464 U.S. 154 (1984). However, Petitioner argues that the rule against applying the principles of issue preclusion against the Government is "not absolute." *Id.*, *citing United States v. Stauffer Chem. Co.,* 464 U.S. 165 (1984) (holding that defensive use of issue preclusion against the Government is available to a party which prevailed against the Government in a prior action).

Petitioner notes that in *Montana v. United States*, 440 U.S. 147 (1979), the federal government was bound by a state court decision ruling against the State of Montana in a tax dispute because the *same issue* had already been litigated before the state court. Petr's Mot. at 7. Petitioner argues that similarly, because the Social Security Administration has already found Mr. Reinhardt to be statutorily blind, the Department of Health and Human Services is precluded from arguing otherwise. *Id.* Petitioner argues that the "fact that there are two separate federal agencies involved…makes no difference. Both agencies are part of the **Government**." *Id.* (emphasis in original). Petitioner did not cite any case law to support the proposition that sister agencies of the federal government are bound by each other's decisions.

In his Response, Respondent notes that under the doctrine of judicial estoppel, "where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed." Respt's Resp. at

4. *R.F. v. Sec'y of Health & Hum. Servs.*, No. 08-504V, 2015 WL 1396357 at *5 (Fed. Cl. Spec. Mstr. Mar. 6, 2015). He notes that "the doctrine is intended to protect the integrity of the judicial system rather than the individual parties to a case, and its application is left to a court's discretion. *Id*, citing *R.F.*, 2015 WL 11396357 at *5. Respondent further notes that as a threshold matter, judicial estoppel requires a final decision "on the merits." *Id.* at 5, *citing R.K. v. Sec'y of Health & Hum. Servs.*, No. 03-0632V at *27 (Fed Cl. Spec. Mstr. Sept 28, 2015).

Respondent argues that the Social Security Administration is a "distinct agency" and its positions cannot be imputed to the Secretary. Respt's Resp. at 5, *citing Perrin v. Sec'y of Health & Hum. Servs.*, No. 99-562V, 2004 U.S. Claims LEXIS 328 at *6 (Fed. Cl. Spec. Mstr. Nov. 22, 2004) ("decisions of Social Security ALJ's are not binding on the special masters or judges of this federal court"). Respondent argues that the SSA and HHS are not interchangeable as parties to litigation. Respt's Resp. at 5. Respondent also argues that he is "not aware of any judicial action with respect to petitioner's arguments, nor any final decision on the merits," and accordingly judicial estoppel does not apply in this instance. *Id*.

In Petitioner's Reply, he argues that Respondent's reliance on *Perrin* is misplaced. Petr's Reply at 5. Petitioner argues that in *Perrin*, the central question was causation, not damages. *Id.* Petitioner argues that the issue here is that the Social Security Administration ("SSA") has "already made a disability determination based on SSA standards that [Petitioner] was legally/statutorily blind" and the Respondent is estopped from "challenging Petitioner's classifications under the SSA's own delineated medical standards." *Id.*

Finally, Petitioner argues that because the SSA did not deem Petitioner eligible for vocational rehabilitation, Respondent's vocational expert should be estopped from opining that Petitioner is a candidate for vocational rehabilitation. Petr's Mot. at 11.

In his response, Respondent states that he "reasonably disputes that Petitioner "is not a candidate" for Vocational Rehabilitation ("VR"). Respt's Resp. at 6. Respondent argues that "whether petitioner is a candidate for VR for the purpose of receiving SSDI benefits is a piece of evidence that can be considered by the court, but it is not the same as determining whether petitioner would benefit from VR for the purpose of a lost wage claim in the Vaccine Program." *Id.* at 6-7. Respondent also notes that "even petitioner's vocational expert has suggested that Petitioner seek out vocational rehabilitation." *Id*. at 7.

### B. Judicial Notice

Petitioner further argues that it is within the Court's power to take judicial notice of the fact that Petitioner is legally blind and requests that I issue a declaratory judgment or something similar to that effect. Petr's Mot. at 11.

Respondent notes that "although the Federal Rules of Evidence do not apply in the Vaccine Program, FRE 201(b) provides: The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably questioned." Respt's Resp. at 6, *citing* Fed. R. Evid. 201. Respondent states that he "reasonably

3

disputes" that "every doctor would agree that petitioner meets the definition of 'statutory blindness'" and that he "reasonably disputes that Petitioner "is not a candidate" for Vocational Rehabilitation. *Id.* Accordingly, Respondent argues, judicial notice of Petitioner's blindness is not appropriate in this case. *Id.*

In his reply, Petitioner notes that he is requesting the Court to "recognize that [Petitioner] is statutorily/legally blind under the SSA definition i.e. the widest diameter of [Petitioner's] visual field subtends an angle no greater than 20 degrees." Petr's Reply at 7. Petitioner states that "his fear is that without a baseline determination from the Court on this issue, the [hearing] will delve into a fruitless argument…." *Id.*

### C. Motion to Strike Dr. Lee's Expert Report

Petitioner urges me to "apply *Daubert* principles in excluding any opinions of Dr. Lee on [Petitioner's] ability to perform Activities of Daily Living (ADLs) or return to work in certain occupations." Petr's Mot. at 10. Petitioner argues that Dr. Lee's opinions, "as adopted and expanded upon by Mr. Leslie and HHS, violate principles of issue preclusion and judicial estoppel." *Id.*

In his Response, Respondent agrees with Petitioner that "In the Vaccine Program, scientific evidence is evaluated for reliability using the test set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Respt's Resp. at 2, *citing Terran v. Sec'y of Health & Hum. Servs.*, 195 F.3d 1302, 1316 (Fed. Cir. 1999), *cert. denied*, 531 U.S. 812 (2000). However, Respondent notes that application of the *Daubert* test in the Vaccine Program is "procedurally different from its use in jury proceedings where there is stricter adherence to the Federal Rules of Evidence." *Id.* at 2. Respondent argues that the principle of *Daubert* is to "prevent scientifically unsound evidence from being presented to the jury," and in the Vaccine Program, the lack of a jury reduces the need for a strict application of the *Daubert* test. Citing *Veryzer v. Sec'y of Health & Hum. Servs.*, Respondent argues that "there are two different, reasonable procedures that can be applied in a non-jury setting to test scientific testimony for reliability. One method is for the factfinder to exclude unreliable testimony prior to any sort of hearing. Alternatively, the factfinder could consider the evidence and subsequently apply the reliability test to determine whether to afford the evidence any weight. The choice to follow either of these approaches is completely within the special master's discretion." No. 06-522V, 2010 U.S. Claims LEXIS 375, at *73 (Fed. Cl. Spec. Mstr. June 15, 2010) (finding that a special master may exclude unreliable evidence, or admit the evidence and "afford it but trifling probative weight").

Respondent further argues that Dr. Lee's conclusions are "extremely limited" and do not fall under the purview of a different expert. Respt's Resp. at 3. Respondent states that Dr. Lee's conclusions (e.g., Petitioner's driving ability) are not out of the scope of his expertise and in fact, "neither of the vocational experts in this case are qualified to interpret the visual testing in this way." *Id.* at 4. Respondent therefore argues that Dr. Lee's report is "probative, and no part should be stricken." *Id.*

In his reply, Petitioner argues that Dr. Lee is opining on subject matter outside his expertise. Petr's Reply at 4. Petitioner urges me to consider only those opinions from Dr. Lee that he is

4

qualified to give and to "be wary of allowing Dr. Lee to wade into areas that require the expertise of an occupational and vocational therapist." *Id.* at 5, 7.

### III. Law Governing Judicial Estoppel and Judicial Notice in the Federal Circuit

#### A. Judicial Estoppel in the Federal Circuit

Under the doctrine of judicial estoppel, "where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed." *Cuyahoga Metropolitan Housing Auth. v. United States*, 65 Fed. Cl. 534, 554 (Fed. Cl. 2005), *quoting Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996); *see also Davis v. Wakelee*, 156 U.S. 680, 689 (1895); *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001); *see further Pegram v. Herdich*, 530 U.S. 211 (2000). The Court of Federal Claims has identified three "necessary elements" to be considered when determining whether application of judicial estoppel is appropriate: (1) whether a party's later position is inconsistent with its earlier position; (2) whether a party had successfully persuaded a court to accept the earlier position, such that judicial acceptance of the inconsistent position would suggest that one of the courts had been misled; and (3) whether the party asserting the inconsistent position would be unfairly advantaged (or the other party unfairly prejudiced) unless estopped. *Moreland Corp. v. United States*, 76 Fed. Cl. 268, 294 (2007), *citing Cuyahoga Metropolitan Housing Auth.*, 65 Fed. Cl. at 554). Ultimately, the doctrine is intended to protect the integrity of the judicial system rather than the individual parties to a case, and its application is left to a court's discretion. *Data Gen. Corp.*, 78 F.3d at 1565; *Cuyahoga Metropolitan Housing Auth.*, 65 Fed. Cl. at 554.

The doctrine of judicial estoppel is intended to prevent a litigant from "'playing fast and loose with the courts,' by assuming contrary positions in legal proceedings," *Def. Tech., Inc. v. United States*, 99 Fed. Cl. 103, 127 (2011); *see also Housing Auth. of Slidell v. United States*, 149 Fed. Cl. 614, 643 (2020), and applies "just as much when one of the tribunals is an administrative agency." *Trustees in Bankr. of N. Am. Rubber Thread Co., Inc. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010); *see also City of Wilmington v. United States*, 152 Fed. Cl. 373 (Fed. Cl. 2021). Only when the statements made in the earlier proceeding involve the "truth-seeking function of the court" (or administrative tribunal) does judicial estoppel apply. *Egenera, Inc.*, 972 F.3d at 1379-80 (citation omitted). Judicial estoppel only applies to legal proceedings that are adjudicatory in nature. *City of Wilmington*, 152 Fed. Cl. at 379 (omitting internal citations).

##### i. Effect of Social Security Disability Decisions on the Vaccine Program

In the Court of Federal Claims, "[d]ecisions of Social Security Administrative Law Judges are not binding on the special masters or judges of this federal court." *See Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-884V, 2003 U.S. Claims LEXIS 396 at *11 (Fed. Cl. 2003) (unpub.). Furthermore, decisions of Social Security ALJs regarding whether the petitioner is "disabled" under the Social Security Act are appealed to the federal district courts. Judge Horn noted that "[a]lthough this court certainly gives due regard, and often deference, to the decisions issued by federal District Court judges, those decisions are not binding on judges of this court." *See UMC Electronics Co. v. United States*, 816 F.2d 647, 652 n.6 (Fed. Cir. 1987), *citing South Corp. v. United States*, 690 F.2d 1368, 1371 (Fed. Cir. 1982), *cert. denied*, 484 U.S. 1025 (1988).

As noted, the doctrines of *res judicata* and collateral estoppel operate to prevent the relitigation of claims and issues that have already had their day in court. *Gardner-Cook*, 2003 U.S. LEXIS 396 at *19, *see also Cuyahoga Metropolitan Housing Auth.*, 65 Fed. Cl. at 554. "The issues in the two forums, stemming from different statutes with different purposes, and providing exclusive jurisdiction in different forums, do not operate to foreclose a properly tailored inquiry in the other forum." *Gardner-Cook*, 2003 U.S. LEXIS 396 at *19. Given the different inquiries, "it is not inconsistent for [a] petitioner to receive Social Security disability benefits, but no benefits under the Vaccine Compensation Program…." *Id.*

### B. Judicial Notice in the Federal Circuit

Under Federal Rule of Evidence 201(b), "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A courts' power to take judicial notice 'is to be exercised . . . with caution,' that '[c]are must be taken that the requisite notoriety exists,' and that [e]very reasonable doubt upon the subject should be resolved promptly in the negative.'" *Oliver v. Sec'y of Health & Hum. Servs.*, 900 F.3d 1357, 1363 n.5 (Fed. Cir. 2018), *quoting Brown v. Piper*, 91 U.S. 37 (1875).

The Vaccine Act states that the procedural rules to be applied by special masters shall "provide for a less-adversarial, expeditious, and informal proceeding for the resolution of petitions," and specifically that they shall "include flexible and informal standards of admissibility of evidence." *See Hines on behalf of Servier v. Sec'y of Health & Hum. Servs.*, 940 F.2d 1518, 1525 (Fed. Cir. 1991), *citing* 42 U.S.C. § 300aa-12(d)(2)(A), (B). The Federal Circuit has interpreted this provision to mean that "the Federal Rules of Evidence need not be followed in proceedings under the Act." *Hines*, 940 F.2d at 1525. Under the authority granted by 28 U.S.C. § 2071 (1988) and 42 U.S.C. § 300aa-12(d)(2), the Court of Federal Claims has promulgated rules of procedure for use by special masters in vaccine cases. *Id.* Rule 8(b) states: "In receiving evidence, the special master will not be bound by common law or statutory rules of evidence. The special master will consider all relevant, reliable evidence, governed by principles of fundamental fairness to both parties." *Hines*, 940 F.2d at 1525-26, *citing* Rule 8(b), Vaccine Rules of the Office of Special Masters (Appendix J to the RUSCC).

Well-known medical facts are the types of matters of which judicial notice may be taken. *Compare Franklin Life Ins. Co. v. William J. Champion & Co.*, 350 F.2d 115, 130 (6th Cir. 1965), *cert. denied*, 384 U.S. 928 (1966) (taking judicial notice of the fact that cancer does not manifest itself quickly), with *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 347-48 (5th Cir. 1982) ("The proposition that asbestos causes cancer, because it is inextricably linked to a host of disputed issues . . . is not at present so self-evident a proposition as to be subject to judicial notice."); *see also Hines*, 940 F.2d at 1526.

### IV. Analysis

#### A. Respondent is not Estopped from Presenting Evidence Regarding Petitioner's Visual Limitations

6

> i. *Petitioner's Social Security Application is not a Final Adjudication on the Merits*

In his Motion, Petitioner asserts that, because the SSA has already determined that Petitioner is "legally/statutorily blind", Respondent is estopped from presenting evidence from Dr. Lee regarding Mr. Reinhardt's visual limitations, namely, that Petitioner's visual field does not subtend an angle greater than 20 degrees. Petr's Mot. at 11, *see also* Petr's Reply at 6.

Respondent argues that the Social Security Administration is a "distinct agency" and its positions cannot be imputed to the Secretary. Respt's Resp. at 5, *citing Perrin v. Sec'y of Health & Hum. Servs.*, ("decisions of Social Security ALJ's [sic] are not binding on the special masters or judges of this federal court"). Respondent argues that the SSA and HHS are not interchangeable as parties to litigation. Respt's Rep. at 5. Respondent also argues that he is "not aware of any judicial action with respect to petitioner's arguments, nor any final decision on the merits," and accordingly judicial estoppel does not apply in this instance. *Id*. Petitioner counters this point by noting that both *Perrim* and *Gardner-Webb* speak to causation, not damages.

I find Respondent's position to be persuasive in this case. As a threshold manner, in order to consider judicial estoppel, the previous action must have resolved with a final judgment *on the merits* of a case. Only when the statements made in the earlier proceeding involve the "truth-seeking function of the court" (or administrative tribunal) does judicial estoppel apply. *Egenera, Inc.*, 972 F.3d at 1379-80 (citation omitted). Judicial estoppel only applies to legal proceedings that are adjudicatory in nature. *City of Wilmington*, 152 Fed. Cl. at 379 (omitting internal citations).

In order to apply for benefits from the SSA, a person must complete an application. *See* https://www.ssa.gov/applyfordisability/. Following an application, the SSA will review and process an application, then inform an applicant of a decision regarding eligibility. *Id.* If an applicant's request is denied, he may appeal the decision. *See* https://www.ssa.gov/benefits/disability/appeal.html. There are four levels of appeal: reconsideration, hearing by an administrative law judge, review by an appeals court, and federal court review. *Id.*

In this case, Petitioner received SSDI benefits following his initial application to the SSA. *See* Ex. 83, Benefits Planning Query. No appeal appears to have been undertaken. Petitioner has filed no record of an appeal into the record.

Similar to *Mohamed v. Marriott Int'l*, here, the determination that Petitioner was eligible for SSDI benefits was made pursuant to a paper application, without a formal hearing. 944 F. Supp. 277, 283-84 (S.D.N.Y. 1996). Petitioner was required to complete an application and provide a medical certification that he was blind. Because blindness is a "listed disability", SSA did not inquire further into Petitioner's capacity to work. *See* 20 CFR § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience."); *see also* 20 CFR Part 404, Subpart P, App. I (last revised June 3, 2022). "The case for application of the [judicial estoppel] doctrine is clearly strongest when the forum and its procedures permit a judgment on the merits after the orderly presentation of evidence in adversarial

litigation." *See Mohamed*, 944 F. Supp at 283: *Compare Cheatwood v. Roanoke Indus.*, 891 F. Supp. 1528, 1534-38 (N.D. Ala. 1995) (applying estoppel where prior workers compensation determination involved hearing with live sworn testimony by plaintiff) *with Swineford v. Snyder County*, 15 F.3d 1258, 1268-69 (3d Cir. 1994) (declining to give preclusive effect to unemployment compensation board finding in subsequent civil rights litigation, because, *inter alia*, of the board's informal mechanisms of eligibility determination) *and Dockery v. North Shore Medical Ctr.*, 909 F. Supp. 1550, 1557 (S.D. Fa. 1995) (declining to apply collateral estoppel where prior administrative procedure involved only filling out of application).

Here, there was no adversarial litigation involved in Petitioner's SSDI application, and Petitioner has filed no evidence of such litigation. Only when the statements made in the earlier proceeding involve the "truth-seeking function of the court" (or administrative tribunal) does judicial estoppel apply. *Egenera, Inc.*, 972 F.3d at 1379-80 (citation omitted). Because Petitioner's SSDI claim was not adjudicated on the merits, I find that the doctrine of judicial estoppel does not apply in this case.

Although I do not believe that the SSA's grant of Petitioner's SSDI application is a "final adjudication on the merits", for sake of completion, I have addressed Petitioner's other points as well.

> ii. *Decisions of the Social Security Administration are not Binding on Respondent or the Office of Special Masters*

Petitioner argues that because the SSA and HHS are sister agencies of the federal government, positions taken by the SSA preclude HHS from taking a different position.

In Petitioner's Reply, he argues that Respondent's reliance on *Perrin* is misplaced. Petr's Reply at 5. Petitioner argues that in *Perrin*, the central question was causation, not damages. *Id.* Petitioner argues that the central question here is that the SSA has "already made a disability determination based on SSA standards that [Petitioner] was legally/statutorily blind" and the Respondent is estopped from "challenging Petitioner's classifications under the SSA's own delineated medical standards." *Id.*

I find Petitioner's position unpersuasive. Although it is true that both *Perrin* and *Gardner-Cook* consider the causation aspect of the Vaccine Program, Judge Horn's reasoning in *Gardner-Cook* is applicable to damages as well. *Perrin*, 2004 U.S. Claims LEXIS 328; *Gardner-Cook*, 2003 U.S. Claims LEXIS 396. In particular, Judge Horn notes that "[t]he issues in the two forums, stemming from different statutes with different purposes, and providing exclusive jurisdiction in different forums, do not operate to foreclose a properly tailored inquiry in the other forum." *Gardner-Cook*, 2003 U.S. Claims LEXIS 396 at *18. When inquiring into an applicant's condition, the SSA does not inquire into the extent of a disability, only into whether one exists. *See generally* CFR 20 § 404.1520. If an applicant suffers from a listed disability, the SSA does not inquire whether the applicant can return to the workforce. *See* CFR 20 §§ 404.1520(a)(4)(i) – (v); *see also* CFR 20 § 404.1520(d). Contrary to the SSA's inquiry, I must determine the extent of Petitioner's injury to determine an award of damages under the Vaccine Program, not under the Social Security Act.

Furthermore, the SSA has promulgated guidance stating that decisions by other governmental agencies and nongovernmental entities are not binding on the SSA. *See* CFR 20 § 404.1504 (stating, in part: "Other governmental agencies and nongovernmental entities…make **disability, blindness**, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are **disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us** and is not our decision about whether you are disabled or blind under our rules.") (emphasis added). It therefore stands to reason that decisions by the SSA are likewise not binding on Respondent or this court. *See generally Gardner-Cook*, 2003 U.S. Claims LEXIS 396, *see also Washington v Ameritech Sickness & Accident Disability Benefit Plan*, 66 Fed. Appx. 656 (7th Cir. 2003) (finding SSA determinations not binding on EIRSA plans); *Combs v. Reliance Std. Life Ins. Co.*, No. 2:08-cv-102, 2009 U.S. Dist. LEXIS 82602 (S.D. Ohio 2009) (finding SSA determination not binding on defendant insurance company for purposes of disability eligibility); *see further Fields v. Wilkie*, No. 20-5197, 2020 U.S. App. Vet. Claims LEXIS 2361 (App. Ct. Va. Claims December 30, 2020) (finding that SSA determinations are not binding upon the Department of Veterans Affairs).

I also note that Petitioner's proposed relief would frustrate the purpose of the Vaccine Program. In essence, Petitioner requests that judicial estoppel be invoked to avoid the presentation of *any* evidence contrary to the SSA's grant of Petitioner's disability application. The Vaccine Program is not governed by the Federal Rules of Evidence. *See* RCFC App. B, Rule 8 (b)(1) ("In receiving evidence, the special master will not be bound by common law or statutory rules of evidence but must consider all relevant and reliable evidence governed by principles of fundamental fairness to both parties."). Principles of fairness require "flexible and informal standards of admissibility of evidence." 42 US.C. §§ 300aa-12(d)(2)(B). To grant Petitioner's motion would mean that I am limited to *only* considering the opinion of the SSA-affiliated doctor who deemed Petitioner disabled. Such an interpretation would prevent me from effectively assessing damages in this case.

Respondent's experts are well-qualified, as evidenced by their CVs that have been filed into the record. *See, e.g.*, Ex. EE, CV of Dr. Lee. Petitioner has not demonstrated that Dr. Lee's report is "so unreliable, it forfeits every trace of being helpful." *Veryzer*, 2010 U.S. Claims LEXIS 375 at *69 - *70. Their testimony will be helpful to me, the factfinder, in appropriately determining the extent of Petitioner's injury and the appropriate award of damages. To not consider Respondent's expert testimony would be a violation of the principles upon which the Vaccine Program is based. RCFC App. B, Rule 8 (b)(1).

### iii. Consideration of Dr. Lee's Expert Opinion

Petitioner requests that the Court "reject opinions of Dr. Lee that fall under the expertise of an OT and/[or] vocational rehabilitation expert." Petr's Mot. at 11. Petitioner urges me to "apply *Daubert* principles in excluding any opinions of Dr. Lee on [Petitioner's] ability to perform Activities of Daily Living (ADLs) or return to work in certain occupations." Petr's Mot. at 10. Petitioner argues that Dr. Lee's opinions, "as adopted and expanded upon by Mr. Leslie and HHS, violate principles of issue preclusion and judicial estoppel." *Id.*

9

Petitioner's position is unpersuasive. While it is true that in the Vaccine Program, "scientific evidence is evaluated for reliability using the test set forth in *Daubert v. Merrell Dow Pharmaceuticals*," application of the *Daubert* test in the Vaccine Program is "procedurally different from its use in jury proceedings where there is stricter adherence to the Federal Rules of Evidence. *Terran v. Sec'y of Health and Hum. Servs.*, 195 F.3d 1302, 1316 (Fed. Cir. 1999), *cert. denied*, 531 U.S. 812 (2000), *citing Daubert*, 509 U.S. 579 (1993).

In determining whether a particular expert's testimony was reliable or credible, I may consider whether the expert is offering an opinion that exceeds the expert's training or competence. *Walton v. Sec'y of Health & Hum. Servs.*, No. 04-503V, 2007 U.S. Claims LEXIS 150, at *17-18 (Fed. Cl. Spec. Mstr. Apr. 30, 2007) (otolaryngologist not well suited to testify about disciplines other than her own specialty). While hearing testimony from an expert, I may properly evaluate, and give appropriate weight to, whether certain testimony is beyond a particular expert's purview. *See e.g., King v. Sec'y of Health & Hum. Servs.*, No. 03-584V, 2010 U.S. Claims LEXIS 87, at *78-79 (Fed. Cl. Spec. Mstr. Mar. 12, 2010) (petitioner's expert far less qualified to offer opinion on general causation issues pertaining to autism than specific issues pertaining to the petitioner's actual medical history, given the nature of the expert's qualifications). An opinion "does not obtain legitimacy in the Program simply because it comes out of the mouth of a medical doctor — especially if that opinion concerns matters outside the doctor's expertise." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 05-1063V, 2016 U.S. Claims LEXIS 677 at *108-*109 (Fed. Cl. Spec. Mstr. Apr. 25, 2016).

Accordingly, I am tasked with determining the relative weight to afford opinions from experts – be they from Petitioner or Respondent. In the Vaccine Program, *Daubert* serves not so much as a bar to expert testimony, but rather as a guiding tool to assess the weight I should grant an expert's opinion. *See Garcia v. Sec'y of Health & Hum. Servs.*, No. 05-0720V, 2010 U.S. Claims LEXIS 390 at *26 (Fed. Cl. Spec. Mstr. May 19, 2010) ("As a rule, [Special Masters] are supposed to state their analysis of expert testimony, including their analysis regarding its reliability. When the Court checks the expert's opinion against the medical records (and/or fact witness affidavits) in the 'did it' phase of causation analysis, or compares the expert's theory to the medical literature filed in the case, that is to determine the level, if any, of reliability in that expert's proffered opinion. It is to establish the reliability to see if the Court may afford it sufficient weight to a preponderance."). Accordingly, I will assess the relative weight that I afford to Dr. Lee's opinion (as I will with the other experts in this case). I decline to conduct that analysis at this point in time, before I have heard his testimony.

        *iv.*    *Judicial Notice of Petitioner's Disability and Eligibility for Vocational Rehabilitation*

Petitioner requests that the Court "take judicial notice of the prior adjudication of [Petitioner's] statutory blindness and judicial notice that [Petitioner] is not a candidate for [vocational rehabilitation]." Petr's Mot. at 11.

The taking of judicial notice is governed by Federal Rule of Evidence 201. Although the Federal Rules of Evidence are not formally applied in Vaccine Act proceedings, the Federal Circuit

has approved the taking of judicial notice in a case arising under the Vaccine Act. *See* 42 U.S.C. § 300aa-12(d)(2)(B); Vaccine Rule 8(b)(1); *see also Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 873 (Fed. Cir. 1992); *Hines ex rel. Sevier v. Sec'y of Health & Hum. Servs.*, 940 F.2d 1518, 1525-26 (Fed. Cir. 1991). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid 201(a).

Respondent states that he "reasonably disputes" that "every doctor would agree that petitioner meets the definition of 'statutory blindness'" and that he "reasonably disputes that Petitioner "is not a candidate" for Vocational Rehabilitation. Respt's Resp. at 6. Accordingly, Respondent argues, judicial notice of Petitioner's blindness or lack of suitability for vocational rehabilitation is not appropriate in this case. *Id.*

I find Respondent's argument persuasive on this point. Dr. Lee has provided an opinion as to the extent of Petitioner's injury. Additionally, both Petitioner and Respondent have submitted expert reports regarding Petitioner's ability to re-enter the workforce. The issue of Petitioner's statutory blindness[2] and suitability for vocational rehabilitation are therefore both "reasonably disputed" by Respondent. I therefore find that judicial notice is inappropriate in this case.

## V.   Conclusion

Accordingly, based on the foregoing, Petitioner's Motion is **DENIED**.

Any questions regarding this Order may be directed to my law clerk, Neil Bhargava, by telephone at 202-357-6351, or by email at neil_bhargava@cfc.uscourts.gov.

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[2] I note for the parties that the overarching issue in this case is not the label of statutory blindness. The goal of the damages hearing is to assess the *extent* to which Petitioner's injury affects his daily life. To that end, at the hearing, the experts should focus their testimony on what Petitioner can and cannot do.